UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GROSS FOUNDATION, INC.,

        Plaintiff,                                 Memorandum and Order

                                                  12 Civ. 1496 (ILG) (RER)

     - against -

SOLOMON GOLDNER,

        Defendant.
-------------------------------------------------------x

GLASSER, United States District Judge:

        Plaintiff Gross Foundation, Inc. ("plaintiff" or "Gross Foundation"), a not-for-profit corporation, brings this action against Solomon Goldner ("defendant" or "Goldner"), alleging that defendant breached a written guaranty agreement between the parties. Plaintiff also brings an unjust enrichment claim for the same underlying conduct. Before the Court is defendant's motion to dismiss plaintiff's claims for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the following reasons, defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

        The following facts are taken from plaintiff's Complaint, and are presumed true for purposes of the pending motion, as well as from documents that are incorporated by reference in the Complaint and documents of which the Court may take judicial notice.[1]

---

[1] The Court explains the legal bases for considering these documents infra.

On December 10, 2002, plaintiff, a New York not-for-profit corporation, purchased two skilled nursing facilities located in Kansas.  Complaint dated March 26, 2012 ("Compl.") ¶ 7.  Plaintiff purchased the facility known as Infinia at Arma (the "Arma Facility") from Ivy at Arma, Ltd., a Utah corporation.  Compl. ¶¶ 8–9.  Plaintiff purchased the facility known as Infinia at Abilene (the "Abilene Facility," together with the Arma Facility, the "Facilities") from Infinia Properties of Abilene, LLC, a Utah limited liability company.  Compl. ¶¶ 8, 10.

At the time of the purchase, plaintiff entered into a Purchase Option and Right of First Refusal Agreement ("Option Agreement") with Ivy at Arma, Ltd. and Infinia Properties of Abilene, LLC (jointly, the "Optionee").  Compl. ¶ 11.  The Option Agreement provided Optionee with the option to repurchase the Facilities from plaintiff under certain circumstances ("purchase option") and imposed upon the Optionee the obligation to repurchase the Facilities from plaintiff under other circumstances ("put option").  Declaration of Solomon Goldner in Support of Reply ("Goldner Reply Decl."), Ex. A (Option Agreement) (Dkt. No. 15).

Also at the time of the purchase, plaintiff leased the Arma Facility to Infinia at Arma, Inc., and leased the Abilene Facility to Infinia at Abilene, Inc.[2]  See Goldner Reply Decl., Ex. A (Option Agreement).  Finally, at or about the same time of the purchase, plaintiff and defendant signed a guaranty agreement ("Guaranty"), wherein defendant guaranteed to plaintiff, upon plaintiff's due exercise of its put option pursuant to the Option Agreement, full payment of the purchase price payable by the Optionee.  Compl. ¶ 12; Declaration of Solomon Goldner ("Goldner Decl."), Ex. 4 (Guaranty) (Dkt. No. 5).

---

[2] As will be discussed in greater detail infra, the parties do not explain the precise relationship between Ivy at Arma, Ltd. and Infinia at Arma, Inc., or between Infinia Properties of Abilene, LLC and Infinia at Abilene, Inc.

On December 1, 2003, Infinia at Arma, Inc. and Infinia at Abilene, Inc. filed

bankruptcy petitions in the United States Bankruptcy Court, Central District of Utah.

Declaration of Jeff Leung ("Leung Decl."), Exs. 1–2 (Dkt. No. 10).  On December 6,

2004, the bankruptcy court issued its Findings of Fact, Conclusions of Law and Order

Confirming Modified Third Amended Joint Plan of Liquidation Filed by the Debtors.

Leung Decl., Ex. 5.  Also on December 6, 2004, plaintiff exercised its put option.  Compl.

¶ 13; see Goldner Decl., Ex. 2 ("Option Demand Letter").  Plaintiff's Option Demand

Letter states:

> Reference is hereby made to the Option Agreement dated
> December 10, 2002 between yourselves and Gross
> Foundation, Inc. regarding the repurchase of the Arma &
> Abilene Facilities.  We are hereby exercising our Put Option
> requiring you to repurchase the Facilities according to the
> terms of the Option Agreement.  We understand that this
> exercise may be subject to the approval of the Bankruptcy
> Court.  We are going thru [sic] this procedure in order to
> protect our rights against yourselves and/or certain
> Guarantor(s).  Please advise us of your intentions on this
> matter.

The purchase price for the Facilities at the time was $3,808,154.  Compl. ¶ 13.

As of March 22, 2007, the Optionee had not paid plaintiff for the Facilities.

Compl. ¶ 14.  Subsequently, plaintiff and defendant signed two additional agreements.

On March 22, 2007, the parties signed the first agreement, limiting defendant's liability

to $2,600,000 and extending any statute of limitation on the original Guaranty through

April 1, 2011.  Compl. ¶¶ 15, 18–19.  On March 17, 2011, the parties signed the second

agreement, further extending the statute of limitation through April 1, 2012.[3] Compl.

¶¶ 20, 23.

---

[3] Defendant alleges that on or about December 30, 2010, plaintiff sold the Arma Facility for
approximately $2,000,000, and submits evidence to support the allegation.  Defendant's

Plaintiff commenced this action on March 27, 2012, alleging that, under the Guaranty and the two subsequent agreements, defendant owes plaintiff $600,000 for the Facilities.[4]  Compl. ¶ 24.

## PROCEDURAL HISTORY

On May 29, 2012, defendant moved to dismiss plaintiff's Complaint, accompanied by a Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."), a Declaration by defendant ("Goldner Decl."), and a Declaration by defendant's attorney ("Leung Decl.").  Dkt. Nos. 3, 4, 5 & 10.  On June 19, 2012, plaintiff filed a Memorandum of Law in Opposition ("Pl.'s Opp'n"), accompanied by a Declaration by plaintiff's attorney ("Weg Decl.").  Dkt. Nos. 11 & 12.  On June 29, 2012, defendant filed his Reply in Further Support of Motion to Dismiss ("Def.'s Reply"), accompanied by a second Declaration by defendant ("Goldner Reply Decl.").  Dkt. Nos. 14 & 15.  On July 6, 2012, plaintiff moved to strike arguments that defendant raised for the first time in his reply.  Dkt. No. 16.  On July 10, 2012, defendant responded to the motion, explaining that he raised those arguments in the event that the Court converts the motion to dismiss into a motion for summary judgment.  Dkt. No. 17.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS

To defeat a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of proof that defendant was adequately served with process.  Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010).  "On review of a motion challenging service of process, the court considers the parties' pleadings and

---

Memorandum of Law in Support of Motion to Dismiss at 4 (Dkt. No. 4); Goldner Decl., Ex. 3. As will be discussed infra, the Court cannot consider this evidence at this stage of the litigation.
[4] Plaintiff explains that it seeks only $600,000 from defendant because it mitigated damages by selling the Arma Facility.  Plaintiff's Memorandum of Law in Opposition To Defendant Solomon Goldner's Motion to Dismiss the Complaint ("Pl.'s Opp'n") at 11 (Dkt. No. 11).

affidavits in the light most favorable to the non-moving party." <u>Krape v. PDK Labs Inc.</u>, 194 F.R.D. 82, 84 (S.D.N.Y. 1999). "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." <u>Darden v. DaimlerChrysler N. Am. Holding Corp.</u>, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court assesses the formal feasibility of the plaintiff's claim for relief by applying a "plausibility standard." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 560 (2007). As the Second Circuit has explained, following the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Court is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009).

First, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions and '[t]hreadbare recitals of the elements of a cause of action, unsupported by mere conclusory statements, do not suffice.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678). Second, "'only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679). To be sufficient, a complaint not only must include a short, plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), but also "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . ." <u>Twombly</u>, 550 U.S. at 544 (internal citations omitted).

# DISCUSSION

## I. Service of Process

Defendant moves to dismiss plaintiff's Complaint pursuant to Rule 12(b)(5) for insufficient service of process. Def.'s Mem. at 10–12. Plaintiff claims that service was proper under Rule 4(e)(1), which permits service in accordance with the law of the state "where the district court is located or where service is made." Pl.'s Opp'n at 2–3. Because this Court is located in New York, plaintiff relies on New York Civil Practice Law and Rules ("CPLR") § 308(4). Pl.'s Opp'n at 3–5. Service under § 308(4) is proper only if service cannot be made with "due diligence" pursuant to § 308(1), which requires delivery to the person to be served, or § 308(2), which requires delivery to "a person of suitable age and discretion" at the workplace or home of the person to be served. CPLR § 308(4). Service under § 308(4), commonly referred to as "nail and mail" service, is effected "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served"; and then by mailing the summons to the person "at his or her last known residence," or mailing the summons via first class mail to "his or her actual place of business." CPLR § 308(4).

In his declaration, defendant attests that service was never made pursuant to § 308(1) or § 308(2), but concedes that plaintiff had the summons affixed to his home and mailed to his home. Goldner Decl. ¶¶ 2–12. Defendant argues only that plaintiff has not sufficiently established the prerequisite of "due diligence" to make service proper under § 308(4). Def.'s Reply at 11–13.

The requirement of due diligence "must be strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received." Lemberger

v. Khan, 794 N.Y.S.2d 416, 416 (2d Dep't 2005). Due diligence is evaluated on a case-by-case basis. Estate of Waterman v. Jones, 843 N.Y.S.2d 462, 464 (2d Dep't 2007). New York courts have held that three attempts at personal service on the defendant at his residence when the defendant could reasonably be expected to be there, on different days of the week and at different times, constitutes due diligence. See, e.g., Johnson v. Waters, 738 N.Y.S.2d 369, 370 (2d Dep't 2002) ("The three attempts to make service of the summons and complaint upon the defendant at his residence at different times and on different days, including a Saturday, were sufficient to constitute due diligence."); Rodriguez v. Khamis, 608 N.Y.S.2d 486, 486 (2d Dep't 1994).

In this case, the affidavit of plaintiff's process server states that service was attempted at defendant's residence on a Thursday evening at 6:40 pm, the following Saturday morning at 11:17 am, and the following Tuesday morning at 7:18 am. Weg Decl., Ex. A. Given these three attempts at defendant's home on three different days of the week and at three different times, when defendant reasonably could be expected to be at home, plaintiff did not need to attempt to serve defendant at his place of business as well. See County of Nassau v. Gallagher, 841 N.Y.S.2d 696, 697 (2d Dep't 2007) ("Where four attempts to serve the defendant at his residence included an attempt on a late weekday evening and an attempt on an early Saturday morning, it was not necessary that the plaintiff . . . attempt to serve the defendant at his workplace." (citations omitted)). Because the Court finds that plaintiff has established the prerequisite of due diligence, as well as the nail and mail requirements of § 308(4), defendant's motion to dismiss pursuant to Rule 12(b)(5) is denied.

## II. Breach of Contract Claim

### A. Denial of Conversion to Motion for Summary Judgment

Defendant argues that plaintiff's breach of contract claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on two separate grounds. First, plaintiff failed to satisfy a condition precedent of the Guaranty due to the Optionee's bankruptcy proceedings. Second, plaintiff sold the Arma Facility, rendering defendant's performance under the Guaranty impossible. The two arguments are premised on two asserted facts that are discussed nowhere in the Complaint: (1) the Optionee was placed in Chapter 11 bankruptcy proceedings and (2) plaintiff has sold the Arma Facility. To support his arguments, defendant submitted extrinsic documents that establish the facts of the bankruptcy proceedings and the Arma Facility sale. Plaintiff then provided its own extrinsic documents to respond to defendant's arguments. When "matters outside the pleadings are presented to and not excluded by the court," the motion to dismiss for failure to state a claim "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Therefore, as a preliminary matter, the Court must decide whether to convert this motion to dismiss into a motion for summary judgment.

A court has two options when presented with extrinsic documents: It may consider the extrinsic documents and convert the motion into one for summary judgment, or it may exclude the documents and decide the motion as a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002). If the court considers the extrinsic documents, the rule requiring conversion to a motion for summary judgment is "strictly enforced and mandatory." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (quotations omitted). Before converting the motion, the court first must give the parties "a reasonable opportunity to

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). This requirement "is governed by principles of substance rather than form." In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985). "The essential inquiry is whether the [parties] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or [were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Id.

In this case, the Court would be justified in converting the motion because it is clear that both parties should have recognized this possibility.[5] Nevertheless, because defendant's conflicting statements[6] might invite subsequent litigation over whether the parties had notice, the Court declines to consider any extrinsic documents and convert the motion into one for summary judgment. Because the Court will proceed with the motion as a motion to dismiss, it must determine which of the parties' exhibits may properly be considered.

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken," Chambers, 282 F.3d at 153,

---

[5] Plaintiff specifically asked the Court to do so. Pl.'s Opp'n at 13. Likewise, although defendant asked the Court to deny plaintiff's request for conversion because it is "unnecessary" and requested a reasonable opportunity to present all relevant materials in accordance with Rule 12(d) should the Court rule against him, Def.'s Reply at 1 nn. 2–3, defendant explicitly told the Court that he included new arguments in his reply in "an abundance of caution" because he anticipated the possibility of conversion and wanted "merely to apprise this Court of all material information and arguments." Letter from Defendant dated July 10 2012 (Dkt. No. 17). Moreover, both parties submitted a number of exhibits, which itself puts them on notice that the Court may convert the motion. See In re G. & A., 770 F.2d at 295 ("A party cannot complain of lack of a reasonable opportunity . . . when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." (citation omitted)); see also Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) ("By attaching to their motion extensive materials that were not included in the pleadings, defendants plainly should have been aware of the likelihood of such a conversion." (citation omitted)).

[6] See supra note 5.

and documents that are "integral" to the complaint where plaintiff possessed or had notice of them <u>and</u> relied on them in drafting the complaint. <u>Global Network</u>, 458 F.3d at 156. "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>Id.</u> at 157 (quotation omitted). The "integral" document exception is most often applied where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint." <u>Id.</u> (citations omitted). This exception "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." <u>Id.</u>

In this case, plaintiff attached no exhibits to its Complaint. However, the Complaint references the Guaranty, the Option Agreement, and the Option Demand Letter. <u>See</u> Compl. ¶¶ 3, 11, 12, 13, 28, 32. Although plaintiff neglected to attach these important documents, defendant has provided them and the Court will consider them. <u>See</u> Goldner Decl., Ex. 4 (Guaranty); Goldner Reply Decl., Ex. A (Option Agreement); Goldner Decl., Ex. 2 (Option Demand Letter).

Additionally, defendant's exhibits concerning the Chapter 11 bankruptcy proceedings have been filed in court and are matters appropriate for judicial notice. <u>See</u> Leung Decl., Exs. 1–8. Plaintiff's two exhibits that are court filings are also appropriate for judicial notice. <u>See</u> Weg Decl., Exs. B & I. The Court may properly consider these documents only to establish the fact that such documents have been filed in court.

The Court will not consider the remaining exhibits proffered by either party because they do not meet the legal standards under Second Circuit precedent. While

defendant argues that his exhibits are "integral" to the Complaint, he does not establish that plaintiff relied on them in drafting its Complaint. Def.'s Mem. at 4 n.2; Def.'s Reply at 1 n.3. The Court has reviewed these remaining exhibits and finds that any connection they may have to the Complaint is too attenuated to warrant consideration on a motion to dismiss. Plaintiff simply attaches its exhibits and provides no justification for the Court to consider them. See Pl.'s Opp'n at 9. Since plaintiff's exhibits are offered only as a response to defendant's arguments but are not in themselves integral to the Complaint, the Court cannot consider them.[7] Having determined that the Guaranty, the Option Agreement, the Option Demand Letter, and the court filings will be considered in ruling on this motion to dismiss, the Court now turns to the merits of defendant's two arguments regarding the breach of contract claim.

### B. Failure to Satisfy Condition Precedent Due to Bankruptcy Proceedings

As discussed supra, the Court may take judicial notice of the bankruptcy petitions of Infinia at Arma, Inc. and Infinia at Abilene, Inc., which were filed in the United States Bankruptcy Court, Central District of Utah, on December 1, 2003. See Leung Decl., Exs. 1 & 2. Filing a petition for bankruptcy automatically "operates as a stay" of certain claims and proceedings against the debtor and property of the estate. 11 U.S.C. § 362(a). The automatic stay "provides the debtor with a breathing spell from his creditors," and "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990) (quotations omitted). Actions taken in violation

---

[7] The Court will discuss more specifically its rejection of certain of these exhibits infra where necessary and relevant.

of the stay are void.  In re 48th Street Steakhouse, Inc., 835 F.2d 427, 431 (2d Cir. 1987);

3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 362.02 (16th ed. 2012).

Defendant argues that plaintiff's Option Demand Letter, purporting to exercise the put option and sent after the petition for bankruptcy was filed, asserted a claim against the bankrupt party in violation of the stay and was thus voided by the stay. Since plaintiff's due exercise of the put option is a condition precedent to defendant's liability under the Guaranty, but the Option Demand Letter was void from the outset, defendant never became liable under the Guaranty.  Def.'s Mem. at 5–7.

Plaintiff responds that the debtors in the Chapter 11 bankruptcy, Infinia at Arma, Inc. and Infinia at Abilene, Inc., are not the same entities as the Optionee, defined in the Option Agreement as Ivy at Arma, Ltd. and Infinia Properties of Abilene, LLC; thus, the Optionee's obligation under the put option was not discharged in bankruptcy.  Pl.'s Opp'n at 8–10.  Defendant argues in reply that the automatic stay precludes, in addition to claims against the debtors, claims against property of the estate, which includes the Arma and Abilene Facilities.  Therefore, plaintiff's Option Demand Letter, which asserted a claim against the Facilities, was void.  Def.'s Reply at 7–8.

According to the Guaranty, defendant's obligation is contingent "upon the due exercise by [plaintiff] pursuant to the Option Agreement of its Put Option."  Goldner Decl., Ex. 4.  The Option Agreement, in turn, provides that plaintiff "shall exercise the Put Option by giving Optionee written notice thereof."  Goldner Reply Decl., Ex. A. Plaintiff does not dispute defendant's characterization of the "due exercise" clause as a condition precedent.  Under Kansas law, which governs the Guaranty, see Goldner Decl., Ex. 4, failure to meet a condition precedent precludes a guarantor's liability.  See TMG Life Ins. Co. v. Ashner, 898 P.2d 1145, 1164 (Kan. Ct. App. 1995).  Therefore, the

Court must determine whether § 362(a) voids plaintiff's Option Demand Letter. If it does, then plaintiff has not satisfied the condition precedent of written notice and defendant is insulated from liability. If it does not, then plaintiff satisfied the "due exercise" requirement with the Option Demand Letter and may proceed against defendant.

Defendant asserts that § 362(a) "provides for an automatic stay of all claims against a bankrupt party." Def.'s Mem. at 5. This characterization of § 362(a) is overly broad; not <u>every</u> claim is barred by § 362(a). Thus, defendant needs to explain specifically which of the eight subsections of § 362(a) voids plaintiff's Option Demand Letter. Defendant's failure to do so inappropriately places the onus on the Court to formulate defendant's argument for him. Nevertheless, the Court begins by determining which, if any, subsections were violated by the Option Demand Letter. Only § 362(a)(3) and § 362(a)(6) are potentially applicable and the Court addresses each in turn.

**1. § 362(a)(3)**

Section 362(a)(3) provides that the automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[8] "Property of the estate" is broadly defined in 11 U.S.C.

---

[8] The "exercise control" clause of the subsection was added in the 1984 Bankruptcy Amendments. "Although there is no legislative history on the scope or meaning of the term 'control,'" it has been suggested that the clause "be defined by the underlying congressional purposes of § 362(a)(3) under the Bankruptcy Reform Act of 1978 – that is, to prevent dismemberment of the estate and assure its orderly distribution. An action dismembers an estate by eliminating or reducing the potential value of an asset of the estate." <u>In re J.F.D. Enters., Inc.</u>, 183 B.R. 342, 348 (Bankr. D. Mass. 1995) (citation omitted). Alternatively, with the addition of the "exercise control" clause, § 362(a)(3) applies even where a creditor already has possession of the debtor's property and takes action to "exercise some authority or influence over the property in derogation of the estate." <u>In re Harchar</u>, 393 B.R. 160, 170 (Bankr. N.D. Ohio 2008). In this particular case, there is no need to analyze the "exercise control" clause separately from the "obtain possession" clause under either theory, as will be demonstrated <u>infra</u>.

§ 541(a)(1) as "all legal or equitable interests of the debtor in property as of the commencement of the case."  It is well established that "[t]he automatic stay of § 362(a) protects only the debtor, property of the debtor or property of the estate.  It does not protect non-debtor parties or their property."  In re Advanced Ribbons & Office Prods., Inc., 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991); see also McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 509–10 (3d Cir. 1997) ("[I]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor." (quotation omitted)).  Therefore, the Court must first identify the debtor and its property interest in this case.

Defendant glosses over this crucial question, asserting only that "the Put Option involved a forced sale of property of the bankruptcy estate."  Def.'s Reply at 8.  However, the bankruptcy petitions list only Infinia at Arma, Inc. and Infinia at Abilene, Inc. as the debtors.  See Leung Decl., Exs. 1 & 2.  Plaintiff argues that Ivy at Arma, Ltd. and Infinia Properties of Abilene, LLC, the entities listed in the Complaint and the Guaranty (but, more to the point, the entities defined as the Optionee in the Option Agreement), are different entities from the debtors.  Pl.'s Opp'n at 8–10.  While this is the core of plaintiff's argument, neither party explains to the Court the precise relationship between these entities.  However, it is clear from the Option Agreement that, whatever the relationship may be, the entities are not identical.  The Option Agreement references the fact that after plaintiff purchased the Facilities from Ivy at Arma, Ltd. and Infinia Properties of Abilene, LLC, it leased the Facilities to Infinia at Arma, Inc. and Infinia at

Abilene, Inc.[9]  See Goldner Reply Decl., Ex. A.  Thus, the debtors and the Optionee are not identical.

The Court must next determine the debtors' property interests.  As discussed supra, the Option Agreement reveals that these entities have leasehold interests in the Facilities.[10]  See Goldner Reply Decl., Ex. A.  Although § 541 defines "property of the estate" to include "all legal or equitable interests of the debtor in property," the Court must look to state law to determine whether the debtor has such an interest in property.  Musso v. Ostashko, 468 F.3d 99, 105 (2d Cir. 2006).  Because the Facilities are located in Kansas, see Compl. ¶ 7, the Court looks to Kansas law to make this determination.  Under Kansas law, leasehold interests are considered property of the estate within the meaning of § 541.  In re Valley View Shopping Center, L.P., 260 B.R. 10, 38 (Bankr. D. Kan. 2001); see also In re 48th Street, 835 F.2d at 430 (collecting cases and citing legislative history of § 541).  Therefore, the debtors' leasehold interests in the Facilities, as "property of the estate," are protected by § 362(a).[11]

---

[9] While plaintiff supports its argument about the identity of the debtors with what it calls "Utah business entity information" and "general bankruptcy search results" of these four entities, see Weg Decl. ¶¶ 4–9, Exs. C–H, the Court does not consider these extrinsic materials, as it has already declined to convert this motion into a motion for summary judgment.  However, the Option Agreement, which the Court may consider, provides support for plaintiff.

[10] Because it has no evidence to the contrary, the Court assumes that the leases were ongoing as of the date the bankruptcy petitions were filed.

[11] Defendant argues that it does not matter "whether the debtor facilities had the precise names of the Optionee or not" because the automatic stay "applies to actions against the debtors or to property of the estate."  Def.'s Reply at 7–8 (emphasis added).  The Court has just determined that the automatic stay applies to the leasehold interests of the Facilities as "property of the estate."  To the extent that defendant argues that § 362(a) prohibits not only claims that would affect the debtors' leasehold interests but even claims against the Facilities that do not affect the leasehold interests, that is plainly incorrect.  The automatic stay protects "property of the estate," § 362(a)(3), which in turn is defined as "all legal or equitable interests of the debtor in property."  § 541 (emphasis added).  Thus, the stay protects property of the estate only to the extent that the debtor has an interest in that property.  See, e.g., In re Farb Invs. Interests Ltd., 155 B.R. 442, 444–45 (Bankr. S.D. Tex. 1993) (holding that, since the "statute only prohibits actions against a debtor or a debtor's property to recover claims against the debtor," foreclosure on non-debtor's ownership interest in property does not violate automatic stay because it does

Defendant has not provided any evidence to suggest that the bankruptcy court stayed all actions as to the non-debtor parties of Ivy at Arma, Ltd. and Infinia Properties of Abilene, LLC.  Thus, Infinia at Arma, Inc. and Infinia at Abilene, Inc. and their property interests are protected by § 362(a), but Ivy at Arma, Ltd. and Infinia Properties of Abilene, LLC and their property interests are not protected.  See Chord Assocs. LLC v. Protech 2003-D, LLC, No. 07-5138 (JFB)(AKT), 2010 WL 1257874, at *4 (E.D.N.Y. Mar. 25, 2010) (holding that because defendants "have brought no information to the Court's attention showing that the Delaware Bankruptcy Court also stayed all actions" as to debtors' wholly owned subsidiaries, which did not file for bankruptcy, the § 362(a) stay does not encompass those defendants).

Since the debtors' leasehold interests are protected by § 362(a), the Court must next determine whether plaintiff's Option Demand Letter violated § 362(a) as an "act to obtain possession of" or an act "to exercise control over" the leasehold interests.  An action that terminates a debtor's lease or evicts a debtor-lessee is considered an act "to obtain possession of" or "to exercise control over" the leasehold interest.  See In re 48th Street, 835 F.2d at 430 (holding that creditor's attempt to terminate debtor's sublease violated automatic stay); In re Theokary, 444 B.R. 306, 316–21 (Bankr. E.D. Pa. 2011) (holding that creditors' stableman's lien sales of horses terminated debtor's leasehold interest and violated automatic stay).  Conversely, an action that does not affect the debtor's leasehold interest, even if it affects a non-debtor's ownership interest in the property, does not violate the automatic stay.  See In re Farb, 155 B.R. at 444.

_____

not affect debtor's leasehold interest in the property).  Therefore, in this case, the stay protects the debtors' leasehold interests in the Facilities and no more.

In this case, plaintiff's Option Demand Letter purported to require Ivy at Arma, Ltd. and Infinia Properties of Abilene, LLC to purchase the Facilities, in which the debtors had leasehold interests. On the limited record before the Court, which does not include the lease agreements between plaintiff and the debtors or other evidence bearing on the nature of the leasehold interests, the Court cannot determine whether this purchase, if completed, would affect the debtors' leasehold interests in the Facilities. Defendant has offered no argument or evidence that the debtors' leasehold interests would be affected, much less terminated. It is certainly possible that the leasehold interests would be entirely undisturbed by a purchase of the Facilities, in which case the Option Demand Letter would not violate § 362(a)(3). Therefore, to the extent that defendant's argument is premised on § 362(a)(3), plaintiff has stated a "plausible claim for relief" sufficient to survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### 2. § 362(a)(6)

Section 362(a)(6), the other potentially applicable subsection, provides that the automatic stay applies to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." A "claim" is defined as any "right to payment." 11 U.S.C. § 101(5). While § 362(a)(3) refers to "property of the estate," § 362(a)(6) protects only "the debtor." See In re Harchar, 393 B.R. 160, 170 (Bankr. N.D. Ohio 2008) ("Section 362(a)(6) is very similar to and complements § 362(a)(3), with the major distinction between the two provisions being that § 362(a)(3) protects property of the estate, while § 362(a)(6) protects the debtor, individually.").

Defendant's argument cannot be sustained under § 362(a)(6). Plaintiff sent the Option Demand Letter to the Optionee and, as the Court explained <u>supra</u>, the Optionee is not identical to the debtors. Thus, even if the letter is construed as a claim for payment within the meaning of § 101, which is a questionable assumption that the Court need not resolve,[12] plaintiff pursued its claim only against the Optionee and not the debtors. Because § 362(a)(6) protects only the debtors, plaintiff's Option Demand Letter did not violate this subsection.

The Option Demand Letter is not voided by § 362(a). At this stage of the litigation, the Court finds that plaintiff's letter constitutes the written notice required by the Option Agreement and, in turn, constitutes the due exercise of the put option required by the Guaranty. Therefore, defendant has not proven that plaintiff failed to satisfy the condition precedent of giving written notice.

### C. Impossibility of Performance Due to Sale of Arma Facility

Defendant argues in the alternative that plaintiff has failed to state a breach of contract claim because, after exercising its put option against the Optionee, plaintiff sold the Arma Facility. Since the Optionee can no longer perform its obligation of purchasing the Facilities, defendant, as guarantor, is discharged from his obligation of guaranteeing the Optionee's performance. Def.'s Mem. at 7–9.

Defendant's argument is entirely based on the premise that plaintiff sold the Arma Facility. To support this asserted fact, defendant "asks this Court to consider" the

---

[12] While the Option Demand Letter purports to ask for payment by the Optionee with the language of "requiring you to repurchase the Facilities," taken as a whole, the letter does not appear to demand payment from the Optionee. The letter recognizes that the bankruptcy court may not permit exercise of the put option and specifically notes that the exercise is a "procedure" intended to protect plaintiff's rights. Goldner Decl., Ex. 2. Thus, it is questionable whether sending the letter constitutes an "act to collect, assess, or recover a claim" in violation of § 362(a)(6).

Arma Escrow Statement, but offers insufficient legal grounds on which the Court may consider this extrinsic document.  See Def.'s Mem. at 4 n.2, 8; see Goldner Decl., Ex. 3. The escrow statement is not attached to the Complaint or incorporated in the Complaint by reference, see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); it is also not "integral" to the Complaint because plaintiff did not rely on it in drafting the Complaint.  See Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006).  The document is "integral" only to defendant's defense of impossibility of performance.  See Ferrer v. Citigroup Global Markets, Inc., No. 09-CV-5095 (NGG)(JMA), 2011 WL 1322296, at *3 (E.D.N.Y. Mar. 31, 2011) (refusing to consider extrinsic document that is "'integral' only to Defendants' defense" in ruling on a motion to dismiss).  Because the escrow statement is an extrinsic document under these standards, and because the Court has already declined to convert the motion to dismiss into a motion for summary judgment, the Court cannot consider the document in ruling on this motion.

Without the escrow statement as evidence, defendant's argument is unsupported. On the face of the Complaint, as well as the exhibits the Court has determined it may consider at this stage, plaintiff has stated a claim for relief.  While defendant's argument is premature at this time, he may reassert this argument at a later stage in the litigation. See Ferrer, 2011 WL 1322296, at *7 ("Examination of . . . relevant contracts will likely resolve this issue.  But, because the court may not properly consider these extrinsic documents at this [motion to dismiss] stage and because Defendants' argument seems to be premised entirely on the [contracts], to find as a matter of law that a 'sale of business' has occurred would be speculative, or at the least premature.").  Because

defendant's argument cannot be properly assessed at this time, the Court denies defendant's motion to dismiss the breach of contract claim.

## III. Unjust Enrichment Claim

Defendant moves to dismiss plaintiff's unjust enrichment claim as duplicative of the breach of contract claim. Def.'s Mem. at 9–10. As an initial matter, the Court must determine which state's law applies to the unjust enrichment claim. Although the Guaranty provides for Kansas law, unjust enrichment is an equitable claim that is outside the scope of the contract's choice-of-law provision and may be governed by the law of a different state. See Icebox-Scoops v. Finanz St. Honore, B.V., 676 F. Supp. 2d 100, 114 (E.D.N.Y. 2009) (holding that New York law can apply to equitable claims, even though Pennsylvania law governed contract claim, because equitable claims "are outside the scope of the Agreement's choice-of-law provision"). Both parties exclusively rely on New York law in their memoranda discussing the unjust enrichment claim, and therefore impliedly consent to the application of New York law to this claim. See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (internal quotation omitted)).

Under New York law, a plaintiff may not recover under an unjust enrichment theory "if the parties have a valid, enforceable contract that governs the same subject matter" as the unjust enrichment claim. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190 (N.Y. 1987)). However, "where there is a bona fide dispute as to the existence of the contract, or where the contract does not cover the dispute in issue," a plaintiff may proceed on both breach of contract and unjust

enrichment theories. <u>VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.</u>, 594 F. Supp. 2d 334, 344 (S.D.N.Y. 2008) (citing <u>Sergeants Benevolent Ass'n Annuity Fund v. Renck</u>, 796 N.Y.S.2d 77, 81 (1st Dep't 2005) and <u>Zuccarini v. Ziff-Davis Media, Inc.</u>, 762 N.Y.S.2d 621, 622 (2d Dep't 2003)).

The existence of the Guaranty is undisputed in this case. Plaintiff's Complaint refers to the contract and defendant attached the contract as an exhibit to his own declaration. <u>See</u> Goldner Decl., Ex. 4. Additionally, it is clear that the Guaranty "governs the same subject matter" as plaintiff's claim for unjust enrichment, namely defendant's alleged obligation to pay plaintiff after the Optionee failed to repurchase the Facilities. Plaintiff implicitly acknowledges this, as its Complaint clearly frames the unjust enrichment claim in terms of defendant's alleged breach of the Guaranty: "As a result of Guarantor's failure to satisfy the debt as aforesaid, Guarantor has been enriched in the sum of at least $600,000.00." Compl. ¶ 35. The "debt" that the Complaint references plainly arises from the alleged breach of the Guaranty. <u>Cf.</u> <u>Icebox-Scoops</u>, 676 F. Supp. 2d at 114–15 (holding that "there is no bona fide disagreement regarding the applicability of the contract to the unjust enrichment claim" because plaintiff's complaint regarding unjust enrichment claim stated that plaintiff "acted in reliance upon the terms and conditions" of the contract (quotations omitted)). Although defendant disputes the <u>enforceability</u> of the Guaranty under the specific circumstances he alleges, he does not argue that the Guaranty does not govern the same alleged debt as the unjust enrichment claim.

Because a contract exists and governs the same alleged debt as the unjust enrichment claim, the Court grants defendant's motion to dismiss plaintiff's unjust enrichment claim as duplicative of the breach of contract claim. <u>See</u> <u>McGee v. State</u>

Farm Mut. Auto. Ins. Co., No. 09 Civ 3579 (ILG)(RLM), 2011 WL 5409393, at *9 (E.D.N.Y. Nov. 8, 2011) (dismissing unjust enrichment claim because it "stems from the alleged contractual relationship" between the parties).

## IV. Remaining Arguments

Defendant offers several other arguments in support of his motion to dismiss, raised for the first time in his reply brief: (1) the Court lacks personal jurisdiction over defendant, (2) the Guaranty is unenforceable under the Kansas Statute of Frauds, and (3) certain conditions precedent to the Guaranty (in addition to the written notice requirement) were never satisfied. See Def.'s Reply at 5–7, 13–14. Plaintiff moved to strike these arguments as improperly raised for the first time in a reply brief. Letter from Plaintiff dated July 6, 2012 (Dkt. No. 16). Defendant subsequently clarified that he raised these arguments in "an abundance of caution" in the event that the Court converted the motion to dismiss into a motion for summary judgment, "merely to apprise this Court of all material information and arguments." Letter from Defendant dated July 10, 2012 (Dkt. No. 17).

Because the Court has declined to convert the motion into a motion for summary judgment, the Court will not consider defendant's new arguments. See Haywin Textile Prod., Inc. v. Int'l Fin. Inv., 137 F. Supp. 2d 431, 434 n.2 (S.D.N.Y. 2001) ("It is well settled that courts should not consider arguments first raised in a party's reply brief which afford no opportunity for response from the opposing party." (citing Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999))). Defendant may raise the affirmative defenses of the Statute of Frauds and failure to satisfy conditions precedent in his Answer. See Fed. R. Civ. P. 8(c)(1) & 12(a)(4)(A). However, defendant's argument that the Court lacks personal jurisdiction over the defendant is rejected with

prejudice. It is well established that a defendant must raise this defense in its "first defensive move," whether an Answer or opening brief on a motion to dismiss. <u>Haywin Textile</u>, 137 F. Supp. 2d at 434 n.2 (quotation omitted); <u>see</u> Fed. R. Civ. P. 12(h).[13]

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to dismiss for insufficiency of service of process and DENIES defendant's motion to dismiss the breach of contract claim. The Court GRANTS defendant's motion to dismiss the unjust enrichment claim.

**SO ORDERED.**

Dated:      Brooklyn, New York
            December 4, 2012

    /s/ ILG                  
I. Leo Glasser
United States District Judge

---

[13] It would not help for defendant to argue that he raised insufficiency of service of process in his opening brief. "As one would reasonably infer from the fact that the Rules list separately the defenses of lack of personal jurisdiction and insufficiency of service of process, these two defenses, while often related, are not identical." <u>Santos v. State Farm Fire and Cas. Co.</u>, 902 F.2d 1092, 1095 (2d Cir. 1990). Raising one of these defenses does not preserve the other defense. <u>See id.</u> (holding that defendant waived insufficiency of service of process defense because it raised only personal jurisdiction defense in answer).